UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENBON DERESSA, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>　　　　　　Defendants. | CASE NO. 2:21-cv-01528-RSM-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: April 8, 2022 |

　　　This matter is before the Court on referral from the District Court and on defendants' motion to dismiss. Dkt. 9.

　　　Plaintiffs, a married couple who are citizens of Ethiopia, allege that defendants, government officials and employees of agencies including the United States Citizenship and Immigration Services ("USCIS"), have unreasonably delayed the processing of their immigration petition by failing to schedule a required interview at an appropriate consulate or embassy. Plaintiffs filed their petition in 2018, and currently, defendants have given plaintiff no timeframe as to when the interview will be scheduled. Defendants move to dismiss plaintiffs' claims and

argue that granting plaintiffs the relief they seek would put the Court in the position of ordering the State Department to restaff its embassy in Ethiopia, which they assert is an unreviewable political question. Alternatively, defendants argue that plaintiffs have failed to state their claims.

The Court concludes that this matter does not present a nonjusticiable political question. Along with their reply brief, defendants submit evidence that the embassy in Ethiopia is restaffed and processing the relevant immigration petitions again. Thus, if the facts indicate that plaintiffs are entitled to relief, such relief would not require the Court to interfere with the staffing of embassies. Further, the Court concludes that plaintiffs have alleged enough facts to survive a motion to dismiss for failure to state a claim. Defendants mostly rely on extrinsic evidence to attack plaintiffs' complaint, but the Court cannot consider that evidence when deciding a motion to dismiss.

Accordingly, the Court recommends that defendants' motion to dismiss (Dkt. 9) be denied.

## BACKGROUND

Plaintiffs allege the following in their complaint. Plaintiff Kenbon Deressa was forced to flee his home in Ethiopia in March 2016 because he faced persecution. Dkt. 1 at 5. He was granted asylum in the United States on September 25, 2018. *Id.* at 6. Once a person has been granted asylum, he may petition for his child or spouse to be granted the same status. *See* 8 U.S.C. § 1158(b)(3)(A). To do so, the asylee may file a "Request for Refugee/Asylee Relative," otherwise known as an I-730 petition. 8 C.F.R. § 208.21(d). If the petition is approved, USCIS "will send the [petition] to the Department of State for transmission to the U.S. Embassy or Consulate having jurisdiction over the area in which the asylee's spouse or child is located." *Id.*

The final step requires an officer at the appropriate embassy or consulate to verify the identities of the spouse or child and to determine that no ineligibilities apply. Dkt. 1 at 6; 9 Foreign Affairs Manual ("FAM") 203.5-4(a). Once that is completed, the child or spouse is issued travel documents and may travel to the United States. *Id.*

On October 25, 2018, plaintiff Deressa filed a Form I-730 petition with USCIS so that his wife, plaintiff Kelem Berihun, who remains in Ethiopia, may be granted status in the United States as a relative of an asylee. Dkt. 1 at 7. On April 23, 2020, USCIS approved plaintiff Berihun's petition. *Id.* However, the embassy in Addis Ababa has not scheduled her for an interview. *Id.*

On November 11, 2021, plaintiffs filed the instant action against various government defendants. *See* Dkt. 1. Plaintiffs bring claims for violations of the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA") and seek a writ of mandamus ordering defendants to schedule plaintiff Berihum for an interview. *Id.* at 11. On February 1, 2022, defendants moved to dismiss all of plaintiffs' claims on jurisdictional grounds and for failure to state a claim. *See* Dkt. 9.

## DISCUSSION

### I. Subject Matter Jurisdiction

Defendants argue that this matter should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. 9 at 7, 15.

A party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to the safeguards similar to those applicable when a Rule 12(b)(6) motion

is made." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted). However, a challenge to the Court's subject matter jurisdiction on factual grounds may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), *cert. denied*, 493 U.S. 993 (1989). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### A. Political Question

The presence of a political question deprives a court of subject matter jurisdiction. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007). "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986). If a political question is inextricable from a case, the doctrine "prevents a plaintiff's claims from proceeding to the merits." *Ahmed Salem Bin Ali Jaber v. United States*, 861 F.3d 241, 245 (D.C. Cir. 2017) (citing *Baker v. Carr*, 369 U.S. 186, 211 (1962)).

Generally, courts have "subject matter jurisdiction over claims that an agency has *unlawfully withheld* or *unreasonably delayed* the processing of immigration-related petitions." *Doe v. Risch*, 398 F. Supp. 3d 647, 655 (N.D. Cal. 2019). Defendants nevertheless argue that the Court lacks subject matter jurisdiction over plaintiffs' claims in this action because granting the relief plaintiffs seek would require the Court "to order the State Department to restaff its Ethiopian Embassy"—which defendants assert is an unreviewable political question. Dkt. 9 at 7. To support their position, defendants provide a declaration by Dale Lim, a visa policy analyst,

dated January 28, 2022, which states that "[o]n November 5, 2021, the State Department ordered all non-emergency U.S. government employees and their family members to depart from Ethiopia due to armed conflict, civil unrest and possible supply shortages."[1] Dkt. 9-3 at 2. He also states that "processing of I-730 petitions at the U.S. Embassy in Addis Ababa is suspended." *Id.* As such, defendants argue that they cannot interview plaintiff Berihum "without compromising [] concerns for the staff's safety, perhaps even necessitating a U.S. military presence in the region." *Id.* And they assert that to grant relief, the Court would have to order defendants to restaff the embassy, so that the political question is inextricable from this case.

In response, plaintiffs submit evidence that embassy staff in Addis Ababa have returned to their posts and resumed interviews. *See* Dkt. 12 at 4. On February 25, 2022, defendants submitted a supplemental declaration by Mr. Lim, which appears to resolve the issue. *See* Dkt. 14. Mr. Lim states that the ordered departure from Ethiopia ended on February 1, 2022 and that the embassy in Addis Ababa is currently processing I-730 petitions, although at a limited capacity. *Id.* at 2–4. Therefore, because the embassy is currently processing I-730 petitions, the State Department would not have to restaff its embassy in Ethiopia if the Court were to grant plaintiffs relief. Accordingly, the Court concludes that if plaintiffs were able to prove their allegations, this matter may not present a nonjusticiable political question. Therefore, the Court recommends that defendants' motion to dismiss on that basis be denied.

### B. Mandamus Act Claim

Defendants move to dismiss plaintiffs' Mandamus Act claim because they "cannot state a judiciable claim under the Mandamus Act." Dkt. 9 at 15. Unlike defendants' jurisdictional

---

[1] The Court may consider this evidence because defendants present a challenge to the Court's jurisdiction based on factual grounds. *See St. Clair*, 880 F.2d at 201.

challenge based on the existence of a political question, which the Court construes as a factual challenge, the Court construes defendants' challenge to plaintiffs' Mandamus Act claim as a facial challenge. Therefore, the Court does not consider extrinsic evidence. *See San Luis & Delta-Mendota Water Auth.*, 905 F. Supp. 2d at 1167.

"Mandamus is an extraordinary remedy traditionally within a district court's discretion." *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997). Mandamus relief is available if (1) the claim is clear and certain; (2) the official's or agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Agua Caliente Tribe of Cupeño Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997)). The Ninth Circuit generally treats "the requirements for obtaining mandamus-type relief under § 1361 as jurisdictional in nature." *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021); *see also Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) ("These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction.")

Defendants argue that the Court must dismiss plaintiffs' Mandamus Act claim for three reasons. First, they argue that plaintiffs have not identified a "clear statutory or regulatory duty that Defendants owe them to process the beneficiary or issue travel documents." Dkt. 9 at 16. Second, defendants argue that the interview plaintiffs request is not "ministerial." *Id.* Third, defendants argue that plaintiffs "cannot show that the government's delay here is unreasonable." *Id.*

Regarding the first reason, plaintiffs allege that defendants have unreasonably delayed plaintiff Berihun's interview—not that defendants have refused to issue travel documents. *See*

Dkt. 1 at 11. Further, many courts have held that held that the pace at which immigration petitions are adjudicated is not discretionary and that mandamus jurisdiction exists in such cases. *See Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1256 (W.D. Wash. 2008) (collecting cases); *see also Risch*, 398 F. Supp. 3d at 655 ("Even where no time limits are imposed by the enabling-statute, Defendants have a non-discretionary duty to adjudicate immigration-related petitions "within a reasonable period of time.") (citing 5 U.S.C. § 555(b)). Therefore, plaintiffs have sufficiently alleged that defendants owe them a duty to schedule the interview within a reasonable time.

The second reason defendants argue plaintiffs' claim should fail is because the interview is not ministerial. *See* Dkt. 9 at 16. For purposes of mandamus relief, a ministerial act is a "clear, non-discretionary agency obligation to take a specific affirmative action, which obligation is positively commanded and so plainly prescribed as to be free from doubt." *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 508 (9th Cir. 1997) (internal quotations and citations omitted). Although the interview is an important part of the I-730 process, defendants concede that they have no discretion in holding it. Dkt. 9 at 16 ("[The interview] is required by regulation and the government cannot waive it."). Plaintiffs are not seeking a specific determination regarding the interview. Rather, they are asking that defendants schedule plaintiff Berihun for an interview. *See* Dkt. 1 at 7–10. As such, the scheduling of the interview is ministerial.

Finally, defendants argue that plaintiffs cannot show that the delay was unreasonable. Dkt. 9 at 16. However, as discussed below regarding plaintiffs' APA claim, whether the delay was reasonable requires a fact intensive analysis that is not suited for a motion to dismiss. *See R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997) (holding that because

1 "mandamus relief and relief under the APA are 'in essence' the same," the Court may elect to evaluate both claims under the APA).

Accordingly, the Court recommends that defendants' motion to dismiss plaintiffs' Mandamus Act claim be denied.

### II.     Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001).

The Court notes that both parties rely on declarations to support their positions. *See* Dkts. 9-1–3, 12-1–4, 14. Although the Court can consider evidence pursuant to a Rule 12(b)(1) motion, *see Warren*, 328 F.3d at 1139, the Court cannot do the same for a Rule 12(b)(6) motion. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."). Neither party addresses why the Court should consider evidence on a Rule 12(b)(6) motion. They also do not address whether

defendants' motion should be converted into a motion for summary judgment, and the Court declines to do so. Therefore, the Court does not consider the extrinsic evidence submitted by the parties for the purpose of defendants' Rule 12(b)(6) motion.

### A. APA Claims

Plaintiffs allege that defendants violated the APA because they have unreasonably delayed plaintiffs' immigration petition and because their reasons for doing so were arbitrary and capricious. *See* Dkt. 1 at 9, 11. Defendants argue that plaintiffs have failed to state a claim under either theory. *See* Dkt. 9 at 9–15.

The APA requires an administrative agency to adjudicate "a matter presented to it" within a "reasonable time." 5 U.S.C. § 555(b). Where an agency fails to do so, a "reviewing court shall compel agency action unlawfully or unreasonably delayed." 5 U.S.C. § 706(1). "A court can compel agency action under [5 U.S.C. § 706(1)] only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intelligence Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004)).

To determine whether an agency's delay in adjudicating a matter is reasonable, courts apply the following factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

1
2    *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting *Telecomm.*
3    *Research and Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)).
4         In their *TRAC* factors analysis, both parties rely on extrinsic evidence. *See* Dkts. 9 at 11–
5    14, 12 at 11. The parties must rely on such evidence because applying these factors is a "fact
6    intensive inquiry." *Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66 (D.D.C. 2017).
7    However, as previously stated, the Court does not consider extrinsic evidence in a motion to
8    dismiss pursuant to Rule 12(b)(6). *See Swartz*, 476 F.3d at 763. At this early stage, it is
9    premature to determine whether the delay was unreasonable. *See Garcia v. Johnson*, No. 14-cv-
10   01775-YGR, 2014 WL 6657591, at *12 (N.D. Cal. Nov. 21, 2014) (denying motion to dismiss
11   that required a *TRAC* analysis); *Hui Dong v. Cuccinelli*, No. CV 20-10030-CBM-(PLAx), 2021
12   WL 1214512, at *4 (C.D. Cal. Mar. 2, 2021) ("[T]he Court finds it is premature to rule on the
13   issue of whether Plaintiff has satisfied the *TRAC* test at the pleading stage as to Plaintiff's APA
14   claim.").
15        Defendants also move to dismiss plaintiffs' APA claim based on arbitrary and capricious
16   agency action because they argue that plaintiffs "cannot show that the government has acted
17   arbitrarily and capriciously." Dkt. 9 at 15.
18        The APA provides that a reviewing court may "hold unlawful and set aside agency
19   action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or
20   otherwise not in accordance with law." 5 U.S.C. § 706(2). Agency action is considered arbitrary
21   and capricious if it (1) "relied on factors which Congress has not intended it to consider," (2)
22   "entirely failed to consider an important aspect of the problem," (3) "offered an explanation for
23   its decision that runs counter to the evidence before the agency," or (4) "is so implausible that it
24

1  could not be ascribed to a difference in view or the product of agency expertise." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1109 (9th Cir. 2012) (internal quotation omitted).

Defendants' argument for dismissal of this claim is based on whether plaintiffs will be able to prove their case, *see* Dkt. 9 at 15, but that is not the appropriate standard on a motion to dismiss. Further, whether defendants' delay in interviewing plaintiff Berihun was arbitrary and capricious depends on the reasons for the delay, which requires extrinsic evidence the Court does not consider in a motion to dismiss.

Accordingly, the Court concludes that plaintiffs have alleged enough to survive defendants' motion to dismiss and recommends that defendants' motion be denied.

## CONCLUSION

The Court recommends that defendants' motion to dismiss (Dkt. 9) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 8, 2022** as noted in the caption.

Dated this 22nd day of March, 2022.

J. Richard Creatura
Chief United States Magistrate Judge